IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| KRISTIN M. PRICE | : | CA 17-3064 |
| | : | BANKRUPTCY NO. 15-17645 |
| | : | |
| | : | |

## APPELLANT UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF REVERSING THE BANKRUPTCY COURT'S DECISION TO DISCHARGE KRISTIN M. PRICE'S FEDERAL STUDENT LOANS

The United States of America, on behalf of its agency, the United States Department of Education ("USDOE"), submits the following brief in support of its appeal:

## STATEMENT OF JURISDICTION

The District Court for the Eastern District of Pennsylvania has jurisdiction of this appeal pursuant to 28 U.S.C. §158(a).

## STANDARD OF REVIEW

On review of a bankruptcy court's order, a district court functions as an appellate court and may affirm, reverse, modify, or remand with instructions for further proceedings. Fed. R. Bankr. P. 8013. The district court reviews the bankruptcy court's findings of fact for clear error and reviews the bankruptcy court's legal conclusions *de novo*. *See Brightful v. Penn. Higher Educ. Assist. Agency*, 267 F.3d 324, 327 (3rd Cir. 2001); *N.J. Higher Educ. Assist. Auth. v. Zierden-Landmesser*, 249 B.R. 65, 69 (M.D. Pa. 2000). "A factual finding is clearly erroneous when 'the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed.' " *Schlumberger Resource Mgmt. Servs., Inc. v. CellNet Data Sys., Inc. (In re CellNet Data Sys., Inc.)*, 327 F.3d 242, 244 (3d Cir. 2003) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Legal conclusions are reviewed under a *de novo* standard whereas mixed questions of law and fact are addressed with a mixed standard, in which the clearly erroneous standard applies to integral facts but plenary review is applied to the "interpretation and application of those facts to legal precepts." *Id.* (internal citation omitted). *See* In re Philadelphia Newspapers, LLC, 418 B.R. 548, 558 (E.D. Pa. 2009), affd, 599 F.3d 298 (3d Cir. 2010), as amended (May 7, 2010).

## Legal Issues Presented

1. Did the Bankruptcy Court commit reversible error when it failed to follow Third Circuit precedent found in *Pennsylvania Higher Education Association v. Faish (In re Faish)*, 72 F.3d 298, 304-05 (3d Cir. 1995) and *Brightful v. Pennsylvania Higher Education Assistance Agency*, 267 F.3d 324, 328-29 (3d Cir. 2001)? Specifically, did the Bankruptcy Court misinterpret the second prong of the *Faish* test, and disregard *Brightful* when it:

   a. misapplied the "additional circumstances" requirement in finding that debtor will suffer an undue hardship for a significant portion of the repayment period; and/or

   b. determined that the remaining repayment period of the debtor's

student loans was seven years, notwithstanding the existence of repayment plans with longer repayment terms?

2. Did the Bankruptcy Court commit legal error by finding that when considering discharge eligibility a debtor need only set out a *prima facie* case of hardship that shifts the burden to USDOE to rebut? Does that finding by the Bankruptcy Court violate *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1997) by not construing § 523 narrowly? Section 523(a)(8) "imposes a 'heightened standard for discharge of student loans,' one that imposes a 'heavy burden' on the debtor." *In re Jones*, 495 B.R. 674 (Bankr. E.D. Pa. 2013) (quoting *In re Traversa*, 2010 WL 1541443, at *10 (Bankr. D. Conn. Apr. 15, 2010)).

Because the bankruptcy court committed significant legal error which is reviewable *de novo*, this brief will focus on the relevant precedent and uncontested facts rather than review the bankruptcy court's lengthy memorandum opinion point by point.

## Factual Background

The debtor, Kristen Price, was 28 years old and in good health at the time she filed for bankruptcy and sought discharge of her federal student loans. (R7 - J5, P. 2 – Price Answers to Interrogatories). Price lived with her three minor children, ages 11, 4, and 3, in a home that she rented from her mother. (R8 - Joint Stipulated Facts #16)). Price separated from her husband in the summer of 2015, shortly before filing for bankruptcy. (R5 – Bankruptcy Court Memorandum Opinion P. 9 Ln. 16).

## Employment and Income

Price was, and is, employed by Main Line Health as a sonographer. (R5 – Memorandum Opinion P. 9-10). She works only 20 hours per week because that is the standard for her field within Southeast Pennsylvania. (R5 – P. 17-18). At the time of trial, Price's monthly gross income was $3,455.83, with net income of $2,405.00 after payroll deductions. (R5 – P. 11). Price's yearly income of $28,860 is well over the official poverty level of $24,300 ($2,025 per month) set by the Department of Health and Human Services for a family of 4 in 2016. In addition to her wages, Price receives court ordered child support for her three children in the amount of $1,400.00 a month. She does not own a car, but her husband pays for the insurance and the lease on a car that she uses daily. In total, Price has a monthly net income of $4,312.05 ($51,744.60 annual income) – well in excess of the poverty level - while working part-time. *See* 81 CFR § 4036.

## Education

Price earned a degree in Radiologic Studies from Thomas Jefferson University in 2011. (R5 – P. 8, Ln. 11). Following graduation, Price obtained only one employment certification based on her degree. (R5 – P. 8 Ln. 13).

## Price's Federal Student Loans

Price obtained four federal student loans to obtain her degree. (R7 - Joint Trial Exhibit 6). At the time of trial, Price owed the United States Department of Education (USDOE) $25,971.85, plus interest, on her federal student loans. *Id.* The parties do not dispute that Price made her monthly payments for a period of time

and stopped making her monthly payment on her federal loans in November 2015. (R8 - Undisputed Facts #6). At that time, if Price continued making monthly payments under the standard repayment plan, she would pay the loans in full by November 2024. (R8 - Undisputed Facts #5). Before stopping payment, Price did not change her repayment plan to an income-driven plan that would allow her to make payments based on her current income and circumstances. Price did not believe that she was eligible for an income-driven repayment plan.[1] (R7 - J4 – Price Deposition P. 34, Ln. 22-35, P. 35, Ln. 3-8). Price is likely eligible for either program based on her current income. (R1 – Trial Transcript, P. 59, Ln. 6-8). *See also* § 685.209 (a) & (b). Price did not attempt to determine what her monthly payment would be based on her current reduced income resulting from her separation from her husband. (R1 - P. 25, Ln. 16-22). Price elected to stop paying back her student loans and declared bankruptcy asking the Court to discharge her student loans. Price's bankruptcy was filed primarily to discharge both her private and federal student loan debt.

Bankruptcy Proceedings

Price filed a petition for bankruptcy on October 26, 2015. On January 14, 2016, Price filed an adversary proceeding in the bankruptcy court seeking discharge of both her private and federal student loans. Price's private student loans were discharged by her private lender. The dischargeabilty of her federal loans was tried

---

[1] The Pretrial Joint Statement of Facts #29 incorrectly states that Price did not have lower payment options from Chase (her private borrower) and USDOE, rather than the fact developed in deposition and at trial that Price *believed* she was not eligible for extended repayment with USDOE.

on November 7, 2016 and the Court granted Price discharge of her federal student loans on June 23, 2017. USDOE brought this appeal.

## Summary Of Argument

Under *de novo* review, Price cannot meet her heavy burden under the *Faish* test. Price cannot show that any "additional circumstance" exists that meets the test for "undue hardship" required by the Third Circuit to satisfy the *Faish* test. The Court did not follow binding Circuit precedent that "additional circumstances" in a discharge determination consist of things like unemployability or extraordinary health needs. The fact that debtor will need to work more than 20 hours a week to support herself and her children if she must repay her taxpayer backed loans cannot be enough on its own to support a finding of "undue hardship" if 11 U.S.C. § 523(a)(8) is to have meaning.

The court framed its suggested lowering of a debtor's legal burden within the language of *Faish*. (R5 – P. 52-55), But then the court found on "thin" facts provided by the debtor, supplemented by the court's own factual additions that the debtor met her "*prima facie*" burden by a "preponderance of the evidence." (P. 55). By creating a new *prima facie* standard, the court lowers the debtor's heavy burden of proof and imposes a burden on the lender to show that a debtor's financial condition will improve during the repayment period. The court's revision of the legal standard established by the Third Circuit is legally incorrect and should be reversed.

## Legal Argument

### A. Price Cannot Meet Her Burden under 11 U.S.C. § 523(a)(8).

The bankruptcy court erred when it found that the debt owed by Price to

USDOE is dischargeable under 11 U.S.C. § 523(a)(8). A federal student loan is

dischargeable in bankruptcy under § 523(a)(8) only when the debtor can show that

repaying the debt would impose an "undue hardship" on the debtor and the debtor's

dependents for a significant portion of the repayment period and that there are

additional circumstances that make a hardship "undue." *See In re: Faish*, 72 F.3d

298, 304-305 (3d Cir. 1995), *cert. denied*, 518 U.S. 1009 (1996). Price cannot meet

her burden that any hardship is "undue" because she cannot show an additional

circumstance that indicates that, if she is currently experiencing an undue

hardship, such hardship would likely continue for a significant portion of the

repayment period.

#### a. **Defining Undue Hardship**

The Third Circuit adopted standards for determining "undue hardship"

in *In re: Faish*, 72 F.3d at 304-305. *Faish* adopted the test first established in

*Brunner v. N.Y. State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987), which

requires the debtor to prove that: 1) based on current income and expenses, the

debtor cannot maintain a "minimal" standard of living for self and dependents if

forced to repay the loan; 2) *additional circumstances* exist indicating that this state

of affairs is likely to persist for a significant portion of the repayment period for the

loan; and 3) the debtor has made good faith efforts to repay the loan. *Id. (emphasis added).*

In defining undue hardship, the Third Circuit outlined the following policy concerns:

> The Brunner standard meets the practical needs of the debtor by not requiring that he or she live in abject poverty for up to seven years before a student loan may be discharged. On the other hand, the Brunner standard safeguards the financial integrity of the student loan program by not permitting debtors who have obtained the substantial benefits of an education funded by taxpayer dollars to dismiss their obligation merely because repayment of the borrowed funds would require some major personal and financial sacrifices.

*In re Faish,* 72 F.3d at 305–306 (cited in *In re Kuznicki,* 483 B.R. 296, 300 (W.D. Pa. 2012).

### 1. Price Did Not Satisfy The Second Prong Of The *Faish* Test.

A debtor must establish each part of the *Faish* test to meet her burden. "If one of the elements of the test is not proven, the inquiry must end there, and the student loans cannot be discharged." *In re: Brightful,* 267 F.3d 324, 327-28 (3d Cir. 2001) citing *Faish,* 72 F.3d at 306. Price did not meet her burden under the second factor of the *Faish* test. The record contains no evidence of any additional circumstance indicating that Price will face "undue hardship" for a significant portion of the repayment period.

Neertheless, the bankruptcy court cited the following "additional circumstances": 1) Price's child care costs would never decrease, finding specifically, "as the children get older and childcare expenses diminish, one can expect that those costs will be replaced commensurately with other child rearing expenses" (R5

8

– P. 27); and "I make this statement by drawing on my own experience and common sense (citations omitted)" (R5- p. 27, FN 20); and 2) her estranged husband is likely to reduce support payments in the near future, noting that Price's husband pays $1400 per month in child support, in addition to roughly $500 for her car, car insurance, renter's insurance, and health insurance, but that "it is reasonably likely this scenario will change." (R5 –P 51). These "circumstances" are not supported by the record. Moreover, neither circumstance satisfies the standard for an "additional circumstance" found in Third Circuit precedent.

a. <u>Debtor Does Not Have Additional Circumstances That Make Her Burden to Repay Her Student Loans Undue</u>

Bankruptcy courts in the Third Circuit have held that the kinds of additional circumstances that justify a finding of undue hardship are "long-term physical or mental problems precluding employment, lack of marketable job skills, or the necessity of fully supporting several dependents which precludes sufficient income." *In re Sperazza*, 366 B.R. 397, 411 (Bankr. E.D. Pa. 2007), citing *In re Roberson,* 999 F.2d 1132, 1137 (7th Cir.1993) (and cases cited). "Courts typically also give great weight to demonstrated physical, mental, emotional and/or psychiatric disabilities or impairments preventing one from working." *In re Davis*, 526 B.R. 136, 146 (Bankr. 2015), citing *In re Brightful,* 1999 WL 1024516, at *2 (Bankr.E.D.Pa. Nov. 8, 1999); *In re L.K.,* 351 B.R. 45, 54 (Bankr.E.D.N.Y.2006). The second prong further requires definitive evidence that the Debtor's earning potential will not improve in the future. *See In re Greco,* 251 B.R. 670 (Bankr.E.D.Pa.2000). "The heavy burden placed on the Debtor in sustaining the

9

second prong effectuates the 'clear congressional intent exhibited in *section 523(a)(8)* to make the discharge of student loans more difficult than that of other nonexcepted debt.'" *In re Fabrizio,* 369 B.R. 238, 248 (Bankr. W.D. Pa. 2007), citing *In re Brunner,* 831 F.2d at 396.

In this case, the bankruptcy court turned the standard around and placed the burden on USDOE to show that the debtor's financial condition will improve. The court accepted the debtor's testimony that she was limited to minimum wage retail work as a second job. The court gave no weight to debtor's admission that she had not considered an office job or any job that might be full-time outside of her chosen field. (R7 - J4 – Price Deposition P. 29, Ln.12-15). The court adopted debtor's assertion that any increased income she could obtain was negligible. Significantly, the court ignored the fact that debtor's alleged limitation to a 20-hour work week did not even extend to the neighboring state of Delaware. Debtor admitted she would take a job in Delaware but that none were presently open. (R5 – P. 22 Ln. 9-13). There was no testimony that indicated a job in Delaware would not open during a significant portion of the current repayment period (seven years). The court, ignoring its duty to consider future opportunities, dismissed the existence of potential opportunities in Delaware. ("That's a meaningless question." R1 – P. 22 Ln. 14). The court's refusal to consider potential improved economic prospects and misstatement of fact in its opinion is reversible error.

Price is of healthy mind and body. Her children are healthy and do not require additional care beyond that of other children. She works part-time and

earns a take-home income above the official poverty level even before accounting for the support she receives from her estranged husband. Considering these circumstances, Price does not face the type of hardship that qualifies as an "undue hardship." *See In re Brightful*, 267 F.3d 330–31 (3d Cir. 2001) (debtor failed to meet burden because she "is intelligent, physically healthy, currently employed, possesses useful skills as a legal secretary, and has no extraordinary, non-discretionary expenses; " *see also, In re: Roberson*, 999 F.2d 1132, 1137 (7th Cir.1993) (explaining that the second prong of the test requires a showing of "the type of barrier that would lead us to believe [the debtor] will lack the ability to repay for several years," such as psychiatric problems preventing work, lack of usable job skills and severely limited education, or the necessity of fully supporting several dependents); *Brunner*, 831 F.2d at 396-97 (the debtor had failed to carry her burden because she is not disabled, elderly or without job prospects). In light of other cases, Price cannot meet her burden to show "additional circumstances" that any alleged hardship is both "undue" and likely to persist for a significant portion of the repayment period whether considered over a seven, twenty, or twenty-five, year period. The debtor must show that an "additional circumstance" limits her ability to find more gainful or additional employment. There is no burden on the lender to show that she will in fact have a job offer that betters her financial position.

Price did not meet her burden. To sustain its finding of "undue hardship" under the second prong of *Faish*, the bankruptcy court relied on two facts that were not raised during the proceedings. First, the bankruptcy court inserted a factual

finding that the cost of child care generally never goes down because debtor's testimony that the level of her child care costs would persist despite her children being in full-time public school. [2] (*See* R5 – P. 27, FN 20). The "additional circumstances" burden is meaningless if it met by the desire of a debtor to work part-time to enable her ability to spend more time with her family rather than repay her student loan.[3] The court made reversible error treating debtor's child care expenses as though they will continue indefinitely. See *Educ. Credit Mgmt. Corp. v. Beattie*, 490 B.R. 581, 589 (W.D. Wash. 2012) ("this Court can take judicial notice of the fact that, in America, children are afforded free public education from the ages of approximately 5 to 18 and that, once Plaintiff's daughter is in school full-time, her child-care expenses will (at the very least) diminish, freeing up further funds for loan repayment."); *see also, In re Frushour*, 433 F.3d 393, 402 (4th Cir. 2005) *citing O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn* ), 339 F.3d 559, 565 (7th Cir.2003) (the debtor's argument that potential childcare costs would outweigh any additional income was "founded on little more than speculation, and cannot satisfy her burden to prove the second *Brunner* factor by a preponderance of the evidence).

Second, the bankruptcy court decided that debtor's estranged husband would discontinue some of his support obligations, specifically that he would discontinue

---

[2] The court acknowledged that the debtor may not be correct that additional employment would be equaled by any increase in child care costs but dismissed any additional income potential as being absorbed by her current monthly expenses. (R5- P. 10, Fn. 7).

[3] This is illustrated by part of the debtor's answer to a question from the court explaining when she would take a higher paying job: "… But the fact is, it would have to work for my kids' lives -- my kids' schedule, and be able to financially afford for me to actually go working full-time. I'd have to make enough for -- to pay for it, or else I'm -- I'm putting them in daycare, working more, and still breaking even, and then they -- you know, they'd never be home with any of their parents..." (R1 – P 50 Ln 16-21).

paying for debtor's car, thus worsening debtor's financial burdens over the shortest available repayment period. (*See* R5 - P. 28, Fn. 21).[4] The court's finding that her husband will stop providing support is not reflected by the record. With respect to the husband's support, both the child support and the payment of automobile expenses, the court acknowledged that "there is nothing in the record that suggests whether Debtor's level of support (both direct and indirect) is more or less generous than the amount to which the Debtor would be entitled to under Pennsylvania law." (*See* R5 - P. 11, Fn. 9). Price and her husband are not divorced, and there is no evidence in the record to suggest that if they divorce, his financial support for her and their children will decrease. In fact, the child support payments are court ordered. (R8 – Joint Fact #24). While analysis of an undue hardship claim requires a court look into an uncertain future, the bankruptcy court in this case made clear error by relying on two facts critical to its analysis that are not found in the record.

The court's approach is contrary to precedent and the statute because it places an unreasonable burden on the *lender* to demonstrate the job opportunities and financial prospects of the *debtor*, turning the *Faish* framework on its head upon a *prima facie* showing of hardship.[5] The court's approach is not consistent with the

---

[4] Price admitted she is not divorced from her husband because it provides economic benefits. (R1 – P. 48, Ln. 2-7). Yet, that choice caused the artificially high income listed on her tax return which the bankruptcy court criticized USDOE for not addressing and finds that because someday in the future she may be legally divorced she meets the burden of hardship. USDOE admittedly did not anticipate the arguments found in the bankruptcy court's opinion and was not able to refute them. The bankruptcy court's approach to Price's potential repayment is indicative of its failure to follow precedent and place the burden upon the debtor. The court utilizes the debtor's higher income to determine that she would owe a payment under any repayment plan even though a) the debtor can obtain a lower or no payment based on her reduced income and b) the debtor's decisions created the harm by presenting an artificially high income.

[5] A *prima facie* showing that was only met by the court's self-generated facts propping up the debtor's financial hardship claim.

statutory framework that student loans are nondischargable in bankruptcy unless the debtor can show an undue hardship.

Considering her current circumstances and future income potential, Price cannot demonstrate the "exceptional circumstances" required for discharge under *Faish*. *In re: Brightful*, 267 F.3d 324, 330.

### b. The Repayment Period Includes Extended Repayment Opportunities

A critical component of the second prong of the *Faish* test is whether any current inability to pay will persist for a significant portion of the repayment period. *In re Faish*, 72 F.3d at 305, *citing Brunner*, 831 F.2d at 396. Rather than evaluating whether a current inability to pay will persist for a significant portion of the repayment period under the repayment plan the debtor selected, the court should consider the repayment plans available to the debtor, and the terms of those plans.

The legislative history of the 1998 changes to §523(a)(8), which extended the "undue hardship" requirement to all student loan bankruptcies, makes clear that Congress intended undue hardship claims to be measured in light of "the availability of various options to increase the affordability of student loan debt, including deferment, forbearance, cancellation and extended, graduated, income-contingent and income sensitive repayment options." H.Rep. No. 750, 105th Cong. 2d Sess. 408 (1998). The court's failure to consider these options in its analysis undermines Congressional intent. Congress, which created 11 U.S.C. 523(a)(8), also created the income-driven repayment plans in the Higher Education Act ("HEA").

The term "repayment period" as used in the Bankruptcy Code should be read in concert with the repayment periods Congress created in the HEA.

Price obtained four federal student loans: two in 2009 under the Federal Family Education Loan Program ("FFELP"), authorized by title IV, part B of the Higher Education Act of 1965, as amended ("HEA"), 20 U.S.C. § 1070, et seq., and two under the William D. Ford Federal Direct Loan Program, authorized by title IV, part D of the HEA, 20 U.S.C. § 1097a, et seq.

Section 493C of the HEA, 20 U.S.C. § 1098e, establishes the income-based repayment ("IBR") plan. A borrower of any FFELP or Direct Loan who has a partial financial hardship may elect to repay under the IBR plan. See 20 U.S.C. § 1098e(b)(1). The USDOE cancels any outstanding balance of principal and interest due on all FFELP or Direct Loans owed by a borrower who elected to participate in the IBR plan and, for a period of time prescribed by the secretary, not to exceed 25 years, meets certain requirements. See 20 U.S.C. § 1098e(b)(7). While a borrower is experiencing a partial financial hardship, as defined in section 1098e(a)(3), the monthly payment under the IBR plan does not exceed 15% of the result obtained by calculating the amount by which the borrowers adjusted gross income exceeds 150% of the poverty line applicable to the borrower's family size as determined under section 673(2) of the Community Services Block Grant Act. See 20 U.S.C. § 1098e(b)(1). Section 1098e(b)(1) further provides that in the case of a married borrower who files a separate Federal income tax return, USDOE calculates the amount of the borrower's IBR plan payment solely on the basis of the borrower's

15

student loan debt and adjusted gross income. USDOE published regulations governing the IBR plan in 34 CFR §§ 682.215 (FFELP) and 685.221 (Direct Loans).

Price testified that she checked the USDOE website to determine if she was eligible for a reduced payment. (R7, J4, P. 34 Ln. 22-25, P. 35, Ln. 1-6). She did not contact anyone from USDOE to inquire about the impact of her separation from her spouse and resulting diminished household income. (R7, J4, P.35 Ln. 7-8). Price never informed USDOE of her changed circumstances and reduced income. (R1 – P. 25, Ln. 20-23). As established at trial, Price can apply to USDOE based on her current income (plus the support she receives) as a separated parent and will likely qualify for both a reduced payment and an extended repayment period under either of two available programs. (R1- P. 57, Ln. 17-23)[6]. Had Price explored the options currently available to her, her current financial situation likely would look quite different, and her future ability to repay looks completely different.

Determining the repayment period when examining federal student loans presents a challenge for courts because USDOE offers borrowers the ability to adjust the payment amount and the repayment period to respond to changes in a borrower's circumstances. As explained during the trial, Price most likely qualifies for the longest repayment period. (R1 - P. 59, Ln 4-8, P. 58, Ln. 16-18). Therefore, the Court should consider the twenty-five year repayment option as the relevant period to determine if Price suffers an "undue hardship."

---

[6] The court's opinion dismisses the potential repayment options by concluding that those options result in a payment based on debtor's joint income while the court simultaneously looked at debtor's current income to determine her inability to pay. The court does not consider debtor's ability to apply for a repayment program utilizing her individual income. (R5 - P. 15, Fn. 15).

A debtor's choice to not participate in a particular repayment plan does not bar her from meeting the undue hardship requirements, but the court should not reward a debtor's failure to fully explore her repayment options by limiting its inquiry to a shorter repayment period (and a likely higher monthly payment) while also not considering that failure a sign of bad faith. *See In re Jones*, 392 B.R. at 130 (a debtor is not required to participate in a repayment plan to obtain discharge); *In re Fabrizio*, 369 B.R. 238, 245 (Bankr. W.D. Pa. 2007) ("A debtor's effort to seek out loan consolidation options that make the debt repayment obligation less onerous is an important component of the 'good faith repayment' inquiry"). Even though Price did not elect to repay under an IBR plan, the court should have considered the availability of the plan when determining the length of the repayment period for purposes of prong two.

Consequently, she cannot show that she will suffer an undue hardship for a significant length of the repayment period.

### c. **Even Under Standard Repayment there is no "undue hardship"**

Even if the Court agrees that a debtor may choose to limit her repayment period making it easier to show a hardship, Price cannot show an additional circumstances that render any hardship she suffers as "undue." Her situation could improve dramatically over the next three to five years by picking up additional employment or full-time employment. Cases where discharge was found support USDOE's argument. *See for example: In re Al-Riyami*, 2014 WL 1584481 (M.D. Ala. Apr. 21, 2014)(discharged the student loans of a single mother whose ability to pay

required overseas travel that was no longer possible; *Educ. Credit Mgmt. Corp. v. Smith*, 2011 WL 4625397 (S.D. Tex. Sept. 30, 2011)(the court found that debtor's income would soon decrease with retirement); *In re Mayer*, 156 F.3d 1225 (Table) (3d Cir. 1998)(the court determined debtor had mental illness); *In re Derby*, 199 B.R. 328 (Bankr. W.D. Pa. 1996)(the debtor's husband was sick and could not contribute to the household while the debtor herself never earned more than $8,000).

Price testified that, though no positions are currently open, hospitals in the state of Delaware offer full-time employment in her field and that she is eligible to work there.[7] (R1 – P. 18, Ln. 22-24). Aside from potential job opportunities in her field or finding full-time employment outside her field, over the next few years, Price can increase her already solid income by taking a second job. While true that a second job would present challenges to Price, within the next few years, if not now, those challenges are not different than any other person with the burden of paying back her loans. Further, within the original repayment period, Price's child care costs will decrease as her younger children enter school full-time and her older child becomes a teenager. Most importantly, there are no additional circumstances that indicate Price's current difficulty paying her student loans, a direct result of her separation from her spouse, will continue for a significant portion of even the standard repayment period.

---

[7] The court incorrectly found that the debtor did not know whether her qualifications extended beyond state borders. (R5 – P. 10, Fn. 6).

Price cannot satisfy the second prong of her *Faish* burden even under the shortest repayment period.

## CONCLUSION

The bankruptcy court in its fifty-six page opinion rejects Third Circuit precedent and proposes a revised interpretation of the *Faish* test that effectively removes the burden of proof from the debtor and places it on a lender. That framework contradicts both the applicable statute and established precedent. At its core, the bankruptcy court's opinion fails to follow the fundamental principle that student loans are nondischargeable in bankruptcy without a showing of an "undue hardship."

Throughout its opinion, the bankruptcy court provides the debtor every possible beneficial finding but erroneously added two facts not found in the record that were essential to its hardship finding. The court made clearly erroneous factual errors, finding that Price may not be able to use her certification in the neighboring state of Delaware and that no full-time positions exist in Delaware. The bankruptcy court committed reversible error and its decision should be reversed.

The debtor did not meet her *Faish* burden. Specifically, the debtor did not show any additional circumstances indicating an undue hardship; the debtor did not show that any current undue hardship is likely to persist for a significant portion of the repayment period under standard repayment and certainly not under an extended repayment term. The court committed reversible error by not considering the debtor's extended repayment options.

For all of the above reasons, the bankruptcy court decision should be reversed.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney

/s/ Charlene K. Fullmer [for]
MARGARET L. HUTCHINSON
Assistant United States Attorney
Chief, Civil Division

/s/ Anthony St. Joseph
ANTHONY ST. JOSEPH
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: 215-861-8267
Fax: 215-861-8618
Anthony.StJoseph@usdoj.gov

Dated: October 13, 2017

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of Defendant United States Department of

Education's Appellate Brief was electronically filed and served on October 13, 2017,

upon:

Scott F. Waterman, Esquire
110 W. Front Street
Media, PA 19063

/s/ Anthony St. Joseph
ANTHONY ST. JOSEPH
Assistant United States Attorney